Cita Trust Company v. Fifth Third Bank Cita Trust Company v. Fifth Third Bank May it please the Court, Edward McGee on behalf of Cita Trust. This is an appeal that involves a number of legal issues, limitation of statute of limitations, amendments thereto, rules of construction, and what happened in this case and the failure of a trial court to allow an amendment. What happened in this case is Cita Trust became the holder of essentially a cyber chattel, that is a bearer bond that according to the complaint and Fifth Third has stipulated at footnote two of its pleadings that they are accepting as true the allegations in the complaint as true in fact for purposes of the appeal. So Cita Trust became the holder of $428 million which is a portion of a bond issue allegedly from Luxembourg paragraph 61 of the complaint that was issued through an underwriter, Luxor Bonds. These are European traded through an outfit called EuroClear which apparently deals with these cyber transactions that relate them into the American market. Can I ask you just a factual question and I guess I have the question for both sides. Where are these bonds now? We don't know. We were told, according to the allegations, two things. First, they were salesman essentially, the clearing house through the United Kingdom in London. We were also told that they were sent back to Luxembourg. What happened is once the bonds were allegedly sent back sometime in September of 2013, Fifth Third ceased giving any information to Cita Trust. Now in the traditional transaction, there's a paper trail. People can follow the paper. But in these transactions, it's all cyber. In order to get any of the records, you must have the username, the user ID, password, and the transaction number and the system that it's traded on which is uniquely Fifth Third, not Cita. What they did was they entered into an agreement, a custodial services agreement which is at the heart of this particular litigation where Fifth Third would safeguard this cyber chattel, this $428 million promissory note. At exhibit one of the agreement which was drafted in page 15, Cita Trust, I mean Fifth Third, admits that they are the safekeepers and they have this cyber item for safekeeping. At the meeting, you had an in-person meeting with Fifth Third in September of 2013, right? The principals did. We're new to it. Yeah, yeah. Okay, I'll be the... Royal you, yeah. Royal me. At that meeting, you learned that they had dispatched the bonds elsewhere without adequate notice to your client and you objected to that, right? Yes, sir. Given all of the suspiciousness that you just described to me, why wasn't that enough to put you on notice that we had better get our act together and sue? Oddly enough because of the Resnick case and Twombly, Judge Martin was on the Resnick panel, we have to be able to plead that with sufficient specificity to allege a wrongdoing. After that meeting, we had nothing in hand that said where they sent it, who they sent it to, how they sent it, why they sent it. They admit that we are the holder of that bond. Pershing was just a clearing house, just a salesperson or sales outfit. Why it went back there, we have never been told. Not one scrap of paper, not one electronic transmission. We don't have sufficient facts to know what they did with it. That creates several competing possibilities. Is it your contention that still to this day, you do not have sufficient facts to know? Exactly. We don't know where it went. Then the case wouldn't seem to me to be ripe or justiciable. I'm sorry? If you're correct that you don't know enough yet to say that this case has ripened into something that yields a lawsuit, then how is this case even justiciable? Because the custodial services agreement did allow for the cause of action to be brought for breach of contract because in the custodial services agreement, Fifth Third took our chattel. They didn't give it back to us. There's a breach of contract in the failure to give it back to us. So you've sustained a ripe, concrete, and immediate injury, is that it? It's ripe for that limited injury, it may not be. Even if you've sustained no injury? I'm sorry? Even if you've sustained no injury? Yes, because as the allegations show, the bond matures on February 10th of 2018. Whoever's holding that can walk up to Luxor or Luxor, knock on the door and say, here's my bond, pay me. Well, if it is being held in nominee form by Pershing in CETA's name, we can go get our bond. If it's been sent someplace else, there was an old movie, Ghost, where they did this few keystrokes and it went somewhere else. If it went somewhere else in someone else's name, and that is under paragraph 12 of the negligence or willful misconduct, then we have a totally different situation. The vigilant case that we cite kind of explains what that is. When you have a stock, it's volatile, it goes up and down every day. But a bond is a promise to pay on a date certain. Just like our grandma bought the Series E savings bonds for $17.50 and it became worth On February 10th of 2018, that series of bonds is worth $428 million. It's wrapped around by an insurance policy. The vigilant case shows that that's normal course of business. El Paso floated a bond. They went through an issuer, which was Morgan, through an underwriter, which was Morgan, that wrote the bond up and issued it. In that and in the vigilant case, Drexel, which is another seller, bought it, and because of the New York Stock Exchange, they put vigilant insurance on it. They sold it to Irving, and Irving said, whoa, wait a second, these were reported as stolen. Let me ask you this, so obviously this case is about the one-year limitation period. Yes. And what happened between the expiration of that period and the date that you filed this lawsuit that gave rise to the injury, or what new facts came to light to cause you to file? All efforts to get information, okay, where did you send this? Why did you send it to Pershing? It's our bond and Pershing is never an owner. Why? Well, it actually didn't go there. It went to Luxembourg, paragraph 61. Who in Luxembourg? Where did it go? Not free to tell you that. Could we have our file? No. Can we have access? No. Since Fifth Third holds all the cards, we can't get any new information on anything other than the return of property. Now the one-year statute, and Judge Marcus, you wrote in Access Now that there are five circumstances where you can listen to new arguments on appeal. The first one is a pure question of law. That's what this is. How do we construe that one-year statute that is written in on paragraph 13? It's neither clear and unambiguous, nor is it reasonable. Why? Yeah, why? Good. Florida doesn't allow you to change the statute of limitations, but in paragraph 28, they agreed Ohio law would control. It's in bold print, governing law, Ohio law controls. You would think, to be fair, but we're going to change Ohio law from its formerly 15 years, then amended to eight years statute of limitations, to one year, but it's not there. Then you go ... Well, but paragraph 13 says, customers shall bring no cause of action, regardless of form, more than one year after the cause of action arose. Arose. What is arose? There's, in both the discovery rule and in basic pleading, there's two elements. Damages, and the defendant did it. We don't know what the damages are. Let us assume the innocent ... To this day, you don't know what the damages are. We don't know whether they're $428 million, or somebody else has our bond waiting for us to come pick it up. Didn't your complaint say your damages were $428 million? Pardon me? Didn't your complaint say that your damages were $428 million? At this point, we don't have our bond. They gave it to somebody else, so that's what we are asserting, but we don't know. It is possible at this point that somebody else has it, because Euroclear does work with 90 countries. It was only delisted in the United Kingdom. But this goes back to Judge Newsom's question. How did you know that when you filed the suit, but not know that at the time the limitations period ran? One of the reasons that amendments are to be liberally granted is so that you can clean up an inartfully drafted complaint. Now is your time. Tell us how you would amend it. Well, first we would file a request for return of property, and discovery to find out where it went. Because in order to understand the nature of the damages here, we have to know why Fifth Third sent it to Pershing. They knew it was a Luxor bond, and remember, this thing started in January, they did their due diligence, and then they recorded it on February 27th as coming into their account through Euroclear. But how do you allege around the limitations period today that we couldn't do at the time you filed? Number one, the limitations hasn't run yet because it hasn't arisen. We have to know that we've lost damages under the Vigilant case. But what I hear you saying is that you knew that when you filed your original one. I mean, do you have more information now than you had then? Not necessarily more information, but the efforts to locate the bond and that extrajudicial information leads us to believe that there is a loss that we have suffered. But that's all going through the computerized transaction system trying to track down where these bonds were or are. But the limitations in paragraph 13 is in a paragraph clearly marked limitation of liability and Fifth Third disclaimed any liability expressed or implied for fitness of use and merchantability of a cyber chattel. Anyone with a lick of sense would say, this doesn't even apply to me. In fairness, though, to Judge Martin's question earlier, this is only a 13-page contract and it sounds like you had 428 million reasons to read it very carefully. And so the fact that it's in a mislabeled provision of the contract, I'm not really sure how far that gets you. Well, you've got to look at 12 and 13. As Fifth Third pointed out, the two are independent paragraphs. We agree. In 13, it says except for the e-tran system and the workspace system. Those were two systems that Fifth Third offered and the limitation of liability on that was to those two specific systems. So if I read paragraph 12, which has no limitation of liability, says that we'll indemnify them for anything except willful misconduct or gross negligence and any losses or damages without a limitation as mentioned in that paragraph and then below we talk about the reading would be, okay, this one applies to willful misconduct and gross negligence. This applies to those cyber systems that they want us to use because they specifically named them. Put it a different way. If you went to Chevrolet and bought yourself a Camaro coupe and you opened your dealer's manual to a page that said care and maintenance of your convertible top, you probably wouldn't read that one. Well, they weren't using a cyber system workspace station. There weren't any transactions going. So there was nothing that would lead them to believe that they have to look there. Like the click camera case where the guy had to sign underneath the limitation of liability and he testified it would have made a difference anyway, but they drew attention to it. In another case that- Again, I think you've eaten well into your rebuttal time. So we'll give you the full rebuttal. I think you've answered the question. Thanks very much. Thank you. May it please the court, Carl Fanter on behalf of Appallee Fifth Third Bank. This commercial dispute turns on the enforcement of the party's custody services agreement. CETA alleges in its complaint that in August and September of 2013, Fifth Third removed bonds from CETA's account at Fifth Third, sent the bonds back to their original issuer in Europe, and repeatedly told CETA all of this during that timeframe. CETA alleges that it objected at the time, yet CETA waited for over two years until December of 2015 to file a lawsuit against Fifth Third Bank. So based on the one-year limitations provision, CETA's lawsuit was promptly dismissed. Ohio, which governs the custody services agreement, has repeatedly held that parties can shorten the time period to file a lawsuit. The House Supreme Court specifically has repeatedly held that a one-year provision is reasonable and appropriate, and CETA cites no contrary authority. Earlier, CETA was arguing that the limitation of time to file suit was improperly placed under the limitation of warranty heading in paragraph 13 of the custody services agreement, and that that somehow makes the language unclear. But the language at issue, which is, customers shall bring no cause of action regardless of form more than one year after the cause of action arose, could not be clearer. In fact, that's exactly what the district court stated when it dismissed the claim. There's no indication how a limitation of warranty header would somehow make that statement misleading. And moreover, for over a century under Ohio law, parties, particularly commercial parties, are charged with knowing everything in a contract that it signs. It's also no surprise that a limitation of time to file suit would be, among other provisions, disclaiming warranties and limiting the types and size of damages. And as Judge Newsom pointed out earlier, it's just a 13-page agreement for allegedly $400 million. And here, a limitations provision is a key provision that you would think parties would read. And again, in contrast to the authority in the briefs of Fifth Third showing that these sorts of provisions are enforceable, many of which are enforceable against consumers, here, of course, they're commercial parties. CETA doesn't cite any authority holding that a provision's location, particularly in a commercial agreement, renders the provision unclear or ambiguous. Right at the end, CETA's counsel also made the argument that the limitation of time to suit was unclear and ambiguous in light of paragraph 12. But these paragraphs don't really have anything to do with one another. Paragraph 12 is an indemnity provision that allows Fifth Third to obtain indemnity from CETA trust in the event a third party files an action against the bank. The language that CETA's referring to basically just disallows the bank from claiming indemnity from CETA in the event that the bank acted with intentional conduct or gross negligence. It has nothing to do at all with the one-year time period to file a lawsuit. And in fact, again, under a House Supreme Court precedent, every provision should be given meaning to be read as a whole. So even if there was any sort of tension between those provisions, the most obvious and easiest way to harmonize those is construing one as an indemnity provision and construing the other language as a one-year time period in which to file a lawsuit. So CETA also makes additional arguments that it touched on, which is even assuming that the provision is enforceable, they contend that the discovery rule exception should apply to their claim. But CETA, first of all, has forfeited this argument because it didn't raise it below. And second, even if the court went on to analyze these issues, under Ohio law, the three claims at issue here, negligence, fiduciary duty, and contract, which is the central claim, Ohio doesn't apply the discovery rule to those claims. So there's no reason to apply the discovery rule to those claims when interpreting the contractual provision that's shortening the statutory time to file these claims. What exactly under Ohio law does the discovery rule require? It requires sufficient notice to trigger further investigation or something? Yes, Your Honor. So there can be either actual notice or inquiry notice is what it's called under the Hamilton and Flowers cases that are cited in the brief. So even if it applied, your contention would be, look, we had this meeting in September of 2013. We told them what we did. They objected. They should have investigated. Yes. And I would just add to that, in addition to the fact that they were also told independently that the bonds would no longer be listed in their account or in their account statements, that they have alleged repeatedly in their complaint that this breaching of the custody agreement caused damages. And then two, not only the amount of damages, the $428 million that they're alleging, but they also alleged that they suffered irreparable harm, presumably in 2013, all of which I think would provide actual notice for CIDA to pursue any rights that it believed it had. And again, we have to take the allegations as true. Has any Ohio court ever applied the discovery rule to a breach of contract claim? Not that I am aware of, Your Honor. There have been intermediate courts that have stated that. We cited Ohio Supreme Court. But I said that because when I looked at the intermediate appellate law in Ohio, among other things, they said, quote, no Ohio court has applied the discovery rule to a claim for breach of contract. Yes, Your Honor. That's the highest pronouncement I can find from the state courts. That was also mine, Your Honor, as well. But we did cite additional Ohio Supreme Court authorities saying, look, generally speaking, absent a discovery rule being in a statute, such as it is, for example, for fraud or a conversion claim. The answer is there is no case you are aware of that has ever applied the discovery rule to a claim for a breach of contract in the state of Ohio. I feel like I'm being set up for some kind of action. No, no, you're not. I just want to make sure that that is what I believe the law is, and I'm asking whether I've misapprehended it. That is the law. That is my understanding of the law. That is what the cases we cite reflect. We also cite Ohio Supreme Court authority, albeit not in the contract setting, that says, look, the general rule is no discovery rule absent the specific statutory application of the discovery rule. I suppose there may have been times when other claims, such as a legal malpractice claim, which is governed by a separate statute, which the discovery rule applies, sometimes courts are a little sloppy, and they would apply that statute of limitations to something styled as a breach of contract claim. But in reality, the last thing I want to do is mislead the court, but yes, that is my understanding. Relatedly, for the alternative negligence fiduciary duty claims, I think counsel indicated earlier that everything rests on the contract, so I think they're improperly pleaded for the reasons I went into in the brief. But in addition to the contract discovery rule that you're referring to, courts have repeatedly rejected the application of the discovery rule to negligence and breach of fiduciary duty claims. But again, even if the discovery rule applied, and I believe it does not, the complaint repeatedly gives actual, and at a minimum, inquiry notice that they ought to have pursued their claims within one year. CETA also talked about the fact that the assets at issue were bonds. The bank was a custodian. It was a custodian. It's backing up on the discovery rule. That is pure question of law, correct? Or is it a mixed question? It is the routine application of black letter law to a set of facts that we have assumed to be true in the complaint. I apologize if I'm dodging your question. No, no, you're not. You're not. Of course, the issue was never raised in the district court. That's right, Your Honor. And I think the law is relatively clear that you ought not to consider this, because it's been forfeited. But again, assuming that you consider the issue, again, the discovery rule would not apply. And assuming that you did want to apply the discovery rule, and you borrowed the law of what the discovery rule is for other causes of action, the complaint, I think, reflects pretty clearly that they were on actual notice, as well as reasonable inquiry notice. Now, CETA made another argument earlier, and essentially was saying that, look, because the assets at issue are bonds, therefore, their claims haven't accrued yet, for lack of a better term, and they repeatedly allege damages and allege that there was a breach of contract and a breach of fiduciary duty. First of all, the bonds maturity date, which isn't in the complaint, is irrelevant to the issues here. Here, the bank is being sued as a custodian of assets. The fact that the assets are bonds has no significance at all to the breach of contract and the related tort claims. Indeed, the vigilant case that CETA was referring to was actually a cause of action from New York, where a bondholder, actually, I think it was a subrogee of a bondholder, was essentially suing the original bond issuer for a declaration of title for the bonds, so he could obtain the principle of the bonds. And essentially, the court said, in that situation, because they were bearer bonds, and because the claims, because the bonds weren't yet mature, ownership couldn't be determined until the bonds maturity date. But even in that case, and again, we're not a bond issuer, we're not a bond seller, even in that case, the vigilant court dismissed the contract and conversion claims that were at issue there. So again, the bonds maturity date, in addition to not being in the complaint, is a bit of a red herring. You mentioned a couple of times an allegation not being in the complaint, and one of the things, of course, that they're asking is to be allowed to amend their complaint. Are you asking us to go ahead and address these issues that the district court never addressed, or would it be better for us to remand it, allow to amend, and then let the district court address these issues in the first instance? You should affirm the decision below and not address the issues that were forfeited below, nor allow plaintiffs to replead their complaint. Why? I mean, the right to amend is to be liberally granted, right? In the 11th Circuit, starting from an en banc decision in the early aughts through present day, a party needs to move to amend their complaint. Simply asking to amend a complaint in an opposition to a Rule 12 decision is insufficient. That's been repeated over and over again. That did not happen. What happened here was in the conclusion to their opposition brief to the bank's motion to dismiss, they said, in the alternative, if you're going to dismiss our claim, allow us to amend our complaint. Two, even if that was sufficient, and it's not under 11th Circuit precedent, there was no indication below, or really any indication here in the arguments and in the briefing before this court, what the amended complaint would look like, what the substance of the amended complaint would be. Three, there is no reason based on the one year statute of limitation provision that's issue in this case, why any hypothetical amendment would be anything other than futile. For all three of those independent sufficient reasons, the court should not allow the party to amend. At any point prior to the motion to dismiss, plaintiffs could have sought leave to amend. Plaintiffs do it all the time because they want to get a sneak peek at what the motion to dismiss looks like. Even afterwards, under Rule 59 or Rule 60B-6, as this court has indicated repeatedly in its decisions, they could have sought to amend, but again, it didn't happen, and they should not be given leave. Unless there are any more questions, Your Honors, I'll yield my time. No, thank you very much. Thank you, Your Honor. Mr. McGee, you've reserved four minutes. Thank you, Your Honor. If it pleases the court, with regard to the amended complaint, there was no opportunity to do so. The lower court's order, paragraph number three, directed the clerk to terminate all motions and close the file. The case law says that you have to move to amend before or after the order. Well, the lawyer went in and said- Under Rule 15 of the Federal Rules of Civil Procedure, you may amend your pleading once as a matter of course within 21 days after serving it. You didn't do that. Then the rule says in all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave, but the court should freely give leave when justice so requires. We have said in binding precedent, as best I can tell, that the method that you must use in order to seek leave to amend is to file a motion and that in the motion for leave, you should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment. That's been our law for a long time and we've gone on to say that where a request for leave to file an amended complaint simply is embedded within an opposition memorandum, the issue has not been properly raised. How have you raised this properly? In practicing law, trial counsel thought he had filed a sufficient complaint. He was confident in that position. He did not come into the court and ask to amend a complaint he thought was valid. Then the court entered its order and at paragraph 3, terminated all motions and closed the file. He did not have an opportunity after the order to file a motion at all. We have raised it here under, as I said in the access case. Did you ever go back to the district court and file a motion for reconsideration saying in words or substance, you were too quick on the trigger judge to dismiss this case. We're seeking leave to amend and if granted leave, here's what we in fact would plead in the new complaint and here's an attachment of the amendation. Did you ever do that? Ordinarily, one would do that. I'm just asking, did you do that here? In this case, because of the wording of the trial court order, that was not done because the case was ordered closed. The clerk was directed to close the case. You would have still been free even if the court had closed the case to seek reconsideration. Within a fixed period of time, you could have gone back to the judge and said, we think you ought to reconsider this judge and here's why. If you don't know what we would plead, here it is in black and white. The law does not require a litigant to perform a futile act. The trial judge was, I believe, abundantly clear when she wrote, close this file, terminate all motions, all motions. That was pretty clear that the judge was not entertaining anything further with this. Further, the statute of limitations, as we say in vigilant, hasn't run yet because the bond has not matured yet. We just don't know who holds it or owns it or claims it and we can't because we can't do any due diligence because all of the records that would allow us access are uniquely held by Fifth Third. I guess the difficulty I have with that argument, setting aside Judge Marcus' astute observation about rightness and injury, is that you filed a complaint alleging a cause of action that you're now telling us has not yet accrued. I mean, there is, no one throws around Rule 11 flippantly, but there is a Rule 11 obligation when you file a pleading that we have a cause of action here and now you're telling us that it hasn't yet accrued. I just don't understand that position. In the custodial services agreement where they took our cyber chattel and then gave it to a third party, there is something they did that was wrong. The measure of damages we don't know yet because we have reason to believe that they've divested us of ownership, but we need under Twombly and others to be able to plead that with specificity. We can't do that until we can track the cyber track of the transaction to find out where it went, which Fifth Third hasn't told us. They have a contractual obligation to us to give us that in the custodial services agreement, but they're not complying with that. They're not complying because they say the statute is wrong. We say it hasn't run because the bond is not yet payable, even though it's still being sold on the market or was still being sold on the market, so that there is a compensable damage if they have sold it to a third party. We can't find that out unless we have access to their track on what they did with our bond. We should have been able to amend the complaint, and that's what we've asked for here under access now, so that we can get to those records and find out where it went and for what reason it went there. It's a sizable loss that maybe, but unless we have access to find out where it went, we'll never know. I mean, maybe in one of the other 89 countries. I don't know. I wasn't there at the time, but I can stand here and say if we had access, we could put in the transaction numbers. We could track it down and find out how it went, where it went. Why did it go to Pershing that has never claimed ownership of it when they have admitted that it is our bond? They took our chattel and gave it to somebody else. That's a wrong. What the measure of damages is, I don't know yet. I can't do that until I can amend the complaint, conduct discovery, find out those specifics. Then I can amend my complaint to set forth an appropriate damages claim if it has just been misplaced or if it has been intentionally transferred. Those issues are there. I think we've got it. Thank you very much and thank you, counsel. We will be in recess until 9 a.m. tomorrow morning.